

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 01 2010

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| NICHOLAS CARTER and CAROL SEEGER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 08-CV-273-J |
| ATTORNEY LIABILITY PROTECTION SOCIETY, d/b/a ALPS, | ) ) ) | |
| Defendant. | ) ) | |

---

## ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

This matter came before the Court at a hearing on March 12, 2010 to consider two motions for summary judgment filed by the Defendant and a motion for partial summary judgment filed by the Plaintiffs. Brett M. Godfrey appeared on behalf of the Plaintiffs. LaMar F. Jost and Michael L. O'Donnell appeared on behalf of the Defendant.

## I.     BACKGROUND

### A.     PLAINTIFFS' CLAIMS AND FACTUAL ALLEGATIONS

This matter involves a contract dispute involving attorney malpractice insurance. On December 15, 2008, the Plaintiffs filed a complaint which asserted four claims for relief against the Defendant, Attorney Liability Protection Society, d/b/a ALPS (ALPS). The Plaintiffs assert claims

for:

        1) insurance bad faith,
        2) breach of express and implied contract,
        3) fraud, and
        4) violation of Wyoming's Fair Claims Practices Act.

In their complaint, the Plaintiffs allege the following facts to support the four claims for relief:

1.     Nicholas Carter, d/b/a the Carter Law Office, is an attorney licensed to practice law in Wyoming. (Compl. ¶ 1.) The Carter Law Office practiced in an of-counsel affiliation with the firm of Michaels & Michaels, P.C. (Michaels & Michaels). (*Id.*) Carol Seeger is an attorney and was employed as an associate to perform legal services within this firm structure. (Comp. ¶ 2.)

2.     All legal services performed in the Carter Law Office were performed exclusively in the of-counsel affiliation between the Carter Law Office and Michaels & Michaels. (Compl. ¶ 40.)

3.     Nicholas Carter was insured as a named insured attorney and was insured through the of-counsel relationship between the Carter Law Office and Michaels & Michaels under insurance policies issued by ALPS for consecutive coverage periods from June 29, 2001 through June 29, 2003. (Compl. ¶ 5, 7.) Carol Seeger was insured under the policies as an attorney employed by the Carter Law Office and/or Michaels & Michaels to perform legal services in furtherance of the of-counsel relationship with Nick Carter d/b/a the Carter Law Office and Michaels

& Michaels. (Compl. ¶ 8.)

4.	On February 10, 2005, within the extended reporting period of the ALPS insurance coverage, the Plaintiffs were named as defendants in a malpractice action in Campbell County District Court. The action, *Wade Travis Keats and Carolyn Williams v. Nicholas H. Carter and Carol Seeger*, Case No. 26244 (the *Keats* case), arose out of a criminal case against Wade Keats. (Compl. ¶ 10.) Wade Keats was convicted of arson in July 2001. (Compl. ¶ 12.) His conviction was upheld on appeal on February 13, 2003. (Compl. ¶ 13.)

5.	Keats filed a petition for a writ of habeas corpus alleging ineffective assistance of trial counsel for failing to pursue a plea of not guilty by reason of mental impairment. The petition also alleged ineffective assistance of appellate counsel. (Compl. ¶ 14.)

6.	On July 20, 2005, the Wyoming Supreme Court found that Carter and Seeger's representation of Keats had been ineffective and ordered that Keats' conviction be reversed. (Compl. ¶ 30.)

7.	In the malpractice action against Carter and Seeger, the complaint alleged that Carter and Seeger negligently failed to advise Keats to enter a plea of not guilty by reason of mental impairment. (Compl. ¶ 10.) The complaint alleged that Carter and Seeger practiced as individuals, rather than in the form of a professional corporation. (Compl. ¶ 11.)

8.	Jeremy Michaels participated in the analysis concerning whether Keats would plead not guilty by reason of mental impairment pursuant to the of-counsel relationship between the

3

Carter Law Office and Michaels & Michaels. Fifty percent of all fees generated in the defense of Keats were retained by Michaels & Michaels pursuant to the of-counsel affiliation with the Carter Law Office. (Compl. ¶ 40.)

        9.      On March 1, 2005, Jeremy Michaels sent a letter to ALPS tendering the malpractice claim against Carter and Seeger for defense and indemnity. (Compl. ¶ 17.)

      10.     ALPS accepted the tender without reservation of any rights. (Compl. ¶ 18.) ALPS retained attorney Scott Ortiz to represent Carter and Seeger jointly. (Id.)

      11.     Ortiz entered an appearance for Carter and Seeger and filed an answer. (Compl. ¶ 21.) The answer did not raise an affirmative defense that Seeger and Carter were operating under the protection of a professional corporation. (Id.)

      12.     Ortiz failed to timely settle or terminate the case. (Compl. ¶ 28.)

      13.     On August 5, 2005, ALPS notified Carter and Jeremy Michaels that it had no duty to provide any further defense or indemnification of Carter and Seeger and that ALPS would no longer pay Ortiz' fees. (Compl. ¶ 34.) The letter stated that Carter was practicing as a sole practitioner and not in an of-counsel affiliation with Michaels & Michaels, P.C. (Id.)

## B.    PROCEDURAL HISTORY

On May 28, 2009, this Court denied a motion to dismiss filed by ALPS. On November 10, 2009, the Court clarified that the findings in the order did not constitute findings on the merits. The Court accordingly allowed the parties to present all of their arguments and supporting evidence in

motions for summary judgment. ALPS has filed two motions for summary judgment, ALPS'S

Motion for Summary Judgment on Plaintiff Carol Seeger's Claims (Doc. nos. 46, 51) and Defendant

ALPS'S Motion Summary Judgment (Doc. no 61).[1] ALPS has also filed a Reply in Support of its

Motions. (Doc. no 73.) The Plaintiffs have filed a Counter Motion for Partial Summary Judgment

on their claim of bad faith. (Doc. nos. 69, 72.)

## II.  SUMMARY JUDGMENT STANDARD

The Tenth Circuit Court of Appeals aptly summarized the standard for considering a

summary judgment motion in *Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1058 (10th

Cir. 2009):

> Rule 56(c) of the Federal Rules of Civil Procedure instructs that summary
> judgment is appropriate if "there is no genuine issue as to any material fact and . . .
> the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see
> Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202
> (1986); *T-Mobile [Central, LLC v. Unified Government of Wyandotte County*, 546
> F.3d 1299 (10th Cir. 2008)], 546 F.3d at 1306. In making this determination, we
> "examine the record and all reasonable inferences that might be drawn from it in the
> light most favorable to the non-moving party." *T-Mobile*, 546 F.3d at 1306 (citations
> omitted). At this stage, "[c]redibility determinations, the weighing of the evidence,
> and the drawing of legitimate inferences from the facts are jury functions, not those
> of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable
> inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.
> However, "[w]here the record taken as a whole could not lead a rational trier of fact
> to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita
> Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89
> L.Ed.2d 538 (1986).

---

[1]To avoid verbosity and confusion, the Court will cite to the parties' motions by the
electronic case management docket number and page number.

## III. DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT (Doc. nos. 46, 51, 61, 73.)

### A. PLAINTIFFS ARE NOT "INSUREDS" UNDER THE CONTROLLING 2004 POLICY

#### 1. CONTROLLING POLICY

In its motions for summary judgment, ALPS contends that the sole issue in this case is

whether an insurance policy issued to Michaels & Michaels, P.C., effective from June 29, 2004 to

June 29, 2005 ("2004 Policy"), provides coverage for Carter and Seeger's March 1, 2005 malpractice

claim. ALPS submits that the 2004 Policy does not provide coverage and maintains that because

there was no coverage under the 2004 Policy, the Plaintiffs' claims for breach of contract, bad faith,

fraud and unfair claims practices must be dismissed.

The Court agrees that the 2004 Policy controls this matter. The 2004 Policy included the

following terms which are critical to the outcome of this case[2]:

**JUNE 29, 2004 - JUNE 29, 2005 POLICY**

| Named Insured | Michaels & Michaels, P.C. | |
|---|---|---|
| Name of Each Insured Attorney | Michaels, Jeremy D. | **Retroactive Date**<br>04/02/1989 |
| Policy Period | Effective Date:<br>Expiration Date:<br>Loss Inclusion Date: | 06/29/2004<br>06/29/2005<br>04/02/1989 |
| Annual Premium | $3,697 | |

---

[2]The bolding has been done by the Court and does not reflect the bolding in the original policy.

NOTICE: **This is a Claims Made policy**. Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the Insured and reported to the company while this policy is in force. . . .

**This renewal endorsement, including all endorsements listed herein, is incorporated in and made a part of the policy to which it applies. It entirely replaces any Declarations page previously issued in connection with any earlier policy year.** All initial application forms and all renewal application forms submitted to the Company are made a part of these Declarations and of the policy.

1.4 INSURED

1.4.1. The Insured: The word Insured whenever used in this policy, means:

1.4.1.1 The Named Insured listed in item 1 of the Declarations;

1.4.1.2 any attorney or professional corporation who is a partner of, stockholder in or employee of the Named Insured **at the effective date of this policy** for so long as such attorney or professional corporation remains a partner of, stockholder in or employee of the Named Insured and solely while providing professional services on behalf of the Named Insured or predecessor firm(s). The attorneys or professional corporations listed in item 2 of the Declarations shall be conclusively presumed to constitute all such Insureds at the effective date of this policy;

1.4.1.3 any attorney or professional corporation which, **during the policy period**, becomes a partner, officer, director or employee of the Named Insured and only while providing professional services on behalf of the Named Insured or predecessor firms(s);

1.4.1.4 any attorney or professional corporation who was **previously** a partner, officer, director or employee of the Named Insured or predecessor firm(s) only while providing professional services on behalf of such firms, but only to the extent no other insurance applies;

1.4.1.5 any non-attorney who was, **is now or hereinafter becomes** an employee of the Named Insured or predecessor firms(s) only while acting within the scope of such person's duties as an employee of the Named Insured or predecessor firms(s);

1.4.1.6 . . . .

1.4.1.7 any attorney acting as **"of counsel"**, but only while providing professional services **on the behalf** of the Named Insured, any employed attorney or any other employee of the Named Insured or predecessor firm(s).

3.1.4 Effective date as used in this policy means the effective date of this policy listed in the Declarations or **Extended Reporting Endorsement**.

3.1.5 **Extending Reporting Endorsement** means an endorsement issued by the Company providing for an **extended reporting period**.

3.1.6 **Extended reporting period** means that period of time after the end of the **policy period** for reporting claims, arising out of an act, error or omission which occurred prior to the end of the **policy period** and which would have been insured by this policy but for its termination.

3.1.7 **Loss inclusion date** as used in this policy means the loss inclusion date of this policy as listed in the Declarations.

. . .

3.1.9 **Policy Period** means the period of time between the **inception effective** date listed in the Declarations and the date of termination, expiration or cancellation of coverage and specifically excludes any **extended reporting** period thereunder.

3.1.10 **Predecessor firm** means any attorney, partnership, limited liability partnership, limited liability corporation or professional corporation engaged in the private practice of law to whose financial assets and liabilities the firm listed as **Named Insured** in the Declarations is the majority successor in interest.

3.1.11 Professional services shall be deemed, for the purposes of this policy, to include all services or activities performed by an **Insured** attorney in an attorney-client relationship on behalf of one or more clients.

(Doc. nos. 30-2, 30-6, 61-13.)

The 2004 Policy specifically provides that it is a "claims made" policy. Under a claims

made policy, the date of the discovery of the injury and the claim filing date must fall within the

policy period. As explained by the Tenth Circuit in *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358

F.3d 736, 738 (10th Cir. 2004) (bold added):

> "Occurrence-based" insurance requires the insurer to cover any liability that results from an event that occurred during the policy period - even if the injury is discovered and the claim is made after the expiration of the coverage period. **This type of insurance contrasts with the second relevant type of insurance - "claims-made."**

**Under this scheme, the date of the discovery of the injury and the claim-filing date must fall within the policy period**. Generally, a claims-made policy includes a retroactive date that precludes coverage for liability-producing events occurring prior to that date. *See generally In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 409-10 (Minn. 2003) (discussing differences between occurrence-based and claims-made policies). The third type of coverage at issue here is "tail coverage," which one commentator describes as " 'occurrence' coverage for occurrences within the policy period producing claims within the specified extended reporting period." Bob Works, *Excusing Nonoccurrence of Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture: Claims-Made Formats as a Test Case*, 5 Conn. Ins. L.J. 505, 528 n. 36 (1999).

The 2004 Policy was effective from June 29, 2004 to June 29, 2005. The *Keats* malpractice action was filed against the Plaintiffs on February 10, 2005 and Jeremy Michaels tendered the claim to the Defendant on March 1, 2005. (Compl. ¶¶ 9, 17.) Because both the discovery of the injury and the claim filing date fell within the June 2004 Policy period, the Plaintiffs must be insured under the 2004 Policy to prevail in this mater.

## 2. THE "OF-COUNSEL" PROVISION IN SECTION 1.4.1.7 DOES NOT APPLY RETROACTIVELY

The Plaintiffs assert that they are covered as insureds under ¶ 1.4.1.7 of the 2004 Policy as *former* of-counsel attorneys in 2001, 2002 and 2003. (Doc. no. 72, p. 2.) The Plaintiffs admit that they were not of-counsel to Michaels & Michaels during the 2004 policy period, but insist that this fact does not affect the coverage determination.[3]

According to ALPS, to fall within the "of-counsel" provision of the 2004 Policy, two

---

[3]The Plaintiffs have stipulated that they did not act of-counsel to Michaels & Michaels from July 1, 2003 through 2005. (Doc. nos. 61, p. 10, 61-6, pp 1-2.)

conditions must be met.

1) the attorney must be <u>acting</u> as of-counsel during the policy period, and

2) the attorney must have been providing professional services on behalf of the named insured.[4]

(Doc. no. 73, p. 10.)

ALPS insists that the "of-counsel" provision only applies to attorneys acting of-counsel during the 2004-2005 policy period because the provision is drafted in the present tense. As stated above, ¶ 1.4.1.7 defines an insured as any attorney "acting" as of-counsel. ALPS posits the use of the present tense of "acting" of-counsel, but only while "providing" services, limits the of-counsel coverage solely to attorneys who provide professional services during the policy term. (Doc. no. 61, p. 10.) To support its position, ALPS cites to *Kaiser v. Bowlen*, 455 F.3d 1197, 1206 (10th Cir. 2006) and *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 780 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 1038 (2009).

In *Kaiser*, the Court concluded that the term "acquiring" in the phrase, "the Purchaser represents and warrants that it is *acquiring* such Partnership" did not apply after the time of sale. The court explained, "This is the best interpretation of the contract because the clause is clearly written in the present tense: a representation about how a purchaser of an asset is conducting himself at closing logically could not apply at any time other than at the time of sale." *Kaiser*, 455 F.3d at

---

[4] Because the Court finds that the "of-counsel" provision of the 2004 Policy does not cover former "of-counsel" attorneys, it is not necessary to address the argument presented by ALPS that the Plaintiffs did not represent Keats "on behalf of" Michaels & Michaels.

1206. In *Guidiville*, the Ninth Circuit similarly found that a statute which defined "Indian lands" as "lands the title to which *is* held by the United States in trust for an Indian tribe or lands the title to which *is* held by an Indian tribe" meant lands presently held in trust. The court viewed the use of a verb tense as significant and concluded that the present-tense wording left no room for ambiguity. *Guidiville*, 531 F.3d at 766, 780.

The Plaintiffs retort that ¶ 1.4.1.7 notably omits any requirement that the professional services must be performed "during the policy period" or "at the effective date of this policy." On the other hand, the Plaintiffs stress, ¶ 1.4.1.2 and ¶ 1.4.1.3 specifically include these time restrictions:

| 1.4.1.2 any attorney or professional corporation who is a partner of, stockholder in or employee of the Named Insured **at the effective date of this policy** for so long as such attorney or professional corporation remains a partner of, stockholder in or employee of the Named Insured and solely while providing professional services on behalf of the Named Insured or predecessor firm(s). The attorneys or professional corporations listed in item 2 of the Declarations shall be conclusively presumed to constitute all such Insureds at the effective date of this policy; | 1.4.1.3 any attorney or professional corporation which, **during the policy period**, becomes a partner, officer, director or employee of the Named Insured only while providing professional services on behalf of the Named Insured or predecessor firms(s); | 1.4.1.4 any attorney or professional corporation who was **previously** a partner, officer, director or employee of the Named Insured or predecessor firm(s) only while providing professional services on behalf of such firms, but only to the extent no other insurance applies; | 1.4.1.7 any attorney acting as **"of counsel"**, but only while providing professional services on the behalf of the Named Insured, any employed attorney or any other employee of the Named Insured or predecessor firm(s). |
|---|---|---|---|

Relying on the principle, *expressio unius est exclusio alterius*, as discussed in *State v. Cantrell*, 186 P.2d 539, 543 (Wyo. 1947), the Plaintiffs maintain that the express mention of a time

11

limit in two sections, excludes a time limit in the third section. The Plaintiffs urge the Court to find that under ¶ 1.4.1.7, they are covered insureds for claims made during the policy period arising out of their former of-counsel relationship in 2001, 2002 and 2003.

Relying on another rule of construction, ALPS beseeches the Court to reach a different conclusion. ALPS cites to *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156-57 (10th Cir. 2007) for the rule that, "When a contract uses different language in proximate and similar provisions, [the court] commonly understand[s] the provisions to illuminate one another and assume[s] that the parties' use of different language was intended to convey different meanings." ALPS points out that the definitions of an "insured" have a logical progression which indicate that ¶ 1.4.1.7 was intended to only apply to attorneys currently acting of-counsel. According to ALPS:

1.4.1.2 governs present employees of the law firm at the start of the policy period,

1.4.1.3 governs incoming employees who join the law firm during the policy period, and

1.4.1.4 governs outgoing attorneys, providing retroactive coverage for previous employees. ALPS expounds that the 2004 Policy simply treats of-counsel attorneys differently than employees. Employees are entitled to retroactive coverage, and of-counsel attorneys are not. Unlike ¶ 1.4.1.4, the of-counsel provision does not expand the coverage to previous or former of-counsel attorneys.

After thoroughly reviewing the parties thoughtful arguments and contentions, the Court is persuaded that the position of ALPS is correct. In reaching this conclusion, the Court considers the rules of contract construction clarified by the Wyoming Supreme Court:

12

Our established rules of contract interpretation apply to insurance policies. Interpretation is the process of ascertaining the meaning of the words used to express the intent of the parties. The intent of the parties is determined by considering the instrument which memorializes the agreement of the parties as a whole. This court utilizes a standard of interpretation for insurance policies which declares that the words used are given the plain meaning that a reasonable person, in the position of the insured, understands them to mean.

If the language is unambiguous, our examination is confined to the "four corners" of an integrated contract and extrinsic evidence is not admitted to contradict the plain meaning. The language of an insurance policy is ambiguous if it is capable of more than one reasonable interpretation. Because insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer. However, the language will not be tortured to create an ambiguity.

*Doctors' Co. v. Ins. Corp. of Am.*, 864 P.2d 1018, 1024 (Wyo. 1993) (internal citations and quotations omitted).

The Court finds that language of ¶ 1.4.1.7 is critical. The term "acting" is both significant and unambiguous. It denotes current action, taken in the present, during the current policy period. It is illogical to interpret "acting" in ¶ 1.4.1.7 to provide coverage to any attorney who "acted" during a prior policy period. Such an interpretation is entirely inconsistent with the function and purpose of the Plaintiffs' "claims made" policy, which is "to limit the liability of the insurer to a finite period of time." *Axis Surplus Ins. Co. v. Johnson*, 2008 WL 4525409, at *10 (N.D. Okla. Oct. 3, 2008). As articulated in *Sigma Fin. Corp. v. Am. Int'l Specialty Lines Ins. Co.,* 200 F. Supp.2d 710, 716 -717 (E.D. Mich. 2002):

[A] claims made policy benefits the insurer by allowing it to "close its books" on a policy at its expiration date, restricting its liability to a finite period of time, thus

13

permitting " 'a level of predictability unattainable under standard occurrence policies.' " *Resolution Trust Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir.1994); *Upper Allen Township*, 1994 WL 772759 at *5 (noting that claims made policies "minimize the span of time between the insured event and the expiration of the insurer's liability to make payment for the event, and thus allow insurer's to 'close the books' on a policy at its expiration date"); *see also FDIC v. St. Paul Fire and Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir.1993). In return for this limited exposure, the insured benefits from lower insurance premiums and retroactive coverage for wrongful acts which occur prior to the policy period. *Continisio*, 17 F.3d at 68 (less-expensive); *Interdonato*, 988 F.Supp. at 3 n. 1 (lower premiums); *Upper Allen Township*, 1994 WL 772759 at *5 (lower cost to insured and retroactive coverage).

Finally, the Court also agrees with ALPS that the omission of a time period in ¶ 1.4.1.7 does not indicate that the provision extends coverage indefinitely. To the contrary, the use of "acting" in the present tense, in conjunction with the inclusion of the specific time references in ¶¶ 1.4.1.2, 1.4.1.3 and 1.4.1.4 evidence an intent to limit the coverage for of-counsel attorneys to professional services provided during the 2004 Policy period.

### 3.  PLAINTIFFS' REPLACEMENT THEORY

The Plaintiffs also assert that they are named insureds under the renewal endorsement provision of the 2004 Policy. The provision is located on the Declaration Page of the 2004 Policy and reads:

> This renewal endorsement, including all endorsements listed herein, is incorporated in and made a part of the policy to which it applies. It entirely replaces any Declarations page previously issued in connection with any earlier policy year. All initial application forms and all renewal application forms submitted to the Company are made a part of these Declarations and of the policy.

(Doc. no. 61-13, p. 3.) The Plaintiffs submit that under this "replacement" language, the 2004

Declarations page entirely replaces the Declaration pages attached to the 2001, 2002, and 2003 policies. (Doc. nos. 72, p. 8, 21, p. 15.) The Plaintiffs' argument, if accepted, would essentially make the 2001, 2002 and 2003 policies effective in 2004. Under this theory, the Plaintiffs continue, both Seeger and Carter were covered as "of-counsel" under the 2004 Policy and Carter was covered as a "named insured." Carter would be covered as a named insured because the 2001 and 2002 policies listed him as follows.

**June 29, 2001 - June 29, 2002 Policy**

| Named Insured | Michaels & Michaels | |
|---|---|---|
| Name of Each Insured Attorney | Mr. Nicholas H. Carter<br>Mr. William J. Edelman<br>Mr. Jeremy D. Michaels | Retroactive Date<br>7/15/2000<br>10/12/1998<br>04/02/1989 |

(Doc. no. 30-3, pp. 3, 7.)

**June 29, 2002 - June 29, 2003 Policy**

| Named Insured | Michaels & Michaels | |
|---|---|---|
| Name of Each Insured Attorney | Carter, Nicholas<br>Michaels, Deborah<br>Michaels, Jeremy | Retroactive Date<br>7/15/2000<br>4/02/1998<br>04/02/1989 |

(Doc. no. 30-4, pp. 3, 7.)

The Plaintiffs advance two cases to support their argument that the effective and expiration

15

dates of the 2004 Policy became the effective and expiration dates of 2001 policy, *Cast Steep Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298 (11th Cir. 2003) and *Helberg v. Nat'l Union Fire Ins. Co.*, 657 N.E. 2d 832 (Ohio App. 1985). Neither case, however, applies to the facts in this matter. In both *Cast Steep Prods., Inc* and *Helberg*, the **insured** had renewed a prior policy. The courts in both of those cases found that it was an illogical and inequitable interpretation of the insurance contracts to deny coverage to an insured who chose to renew a claims made policy. The Court finds neither case applicable here. Neither of the Plaintiffs renewed an insurance policy issued to them in 2003. Nor did they renew a policy issued to them in 2004.

The renewal endorsement language is unambiguous. It merely apprises the insured that any Declarations from a previous year are no longer effective and they are replaced by the Declarations of the current policy. To accept the Plaintiffs' position is contrary to the plain language of the renewal endorsement provision and contrary to the intent and purpose of a "claims made" policy.

## 4.   SEEGER WAS NOT AN INSURED BY VIRTUE OF HER ALLEGED EMPLOYMENT RELATIONSHIP

ALPS asks the Court to reject the Plaintiffs' claim that Seeger is covered under the 2004 Policy as a prior employee. It appears to the Court the Plaintiffs now only contend that Seeger was insured as an attorney acting of-counsel to Michaels & Michaels. (Doc. no. 72, p. 2, 4.) To the extent that the Plaintiffs continue to assert that Seeger was insured as an employee of Michaels & Michaels, the undisputed evidence produced by ALPS establishes that Seeger was not an employee of Michaels & Michaels and was not covered under ¶ 1.4.1.4 of the 2004 Policy.

16

Seeger's tax returns show that all her income in 2001 and 2002 was earned through self-employment. (Doc. nos. 46-5 to 46-12.) Although she did legal research for the Carter Law Office, she only visited the office of Michaels& Michaels approximately once a week. (Doc. no. 46-2, p. 9.) Jeremy Michaels testified that he was not responsible for compensating her. (Doc. no. 46-2, p. 31.) Furthermore, the Plaintiffs concede that Seeger was paid by the Carter Law Office and her acts were controlled by Carter. (Doc. no. 72, p 16.)

The primary test to determine the existence of an employment relationship is right of control of the alleged employer. Such a right to control the means and manner of work is a prerequisite of the master-servant relationship. *Diamond B Services, Inc. v. Rohde*, 120 P.3d 1031, 1041 (Wyo. 2005). Conversely, the absence of such a right of control is a prerequisite of an independent contractor relationship. Master-servant and independent contractor are thus opposite sides of the same coin. One cannot be both at the same time with respect to the same. *Id.* The undisputed evidence shows that Seeger was not an employee of Michaels & Michaels and consequently was not covered under the 2004 Policy as a previous employee.

## 5.    PLAINTIFFS' ESTOPPEL ARGUMENT

According to the Plaintiffs, on March 3, 2005, ALPS undertook the defense of the Plaintiffs in the *Keats* action with no reservation of right. The Plaintiffs lament that on August 5, 2005, ALPS abruptly withdrew its defense, only days after the Wyoming Supreme Court found the Plaintiffs ineffective in Keats' criminal defense.    The Plaintiffs advocate that because ALPS defended the

17

Plaintiffs in the underlying lawsuit without reserving its rights to deny coverage, ALPS should now

be estopped from disputing coverage. Additionally, the Plaintiffs accuse ALPS of inducing them

to believe that they were fully covered and of failing to explore settlement options when the

possibility of settlement was high. The Plaintiffs cite to *Doctors' Co. v. Ins. Corp. of Am,* 864 P.2d

1018 (Wyo. 1993), which addresses the necessity of providing an insured a reservation of rights

letter for a liability insurer to preserve coverage defenses.

ALPS counters that the Plaintiffs cannot prevail on their estoppel argument because estoppel

cannot create coverage where none exists. Estoppel only applies, ALPS advances, where an insurer

claims a "coverage defense." Because the Plaintiffs are not entitled to *any* coverage under the policy,

an estoppel argument is unavailing.

The Court agrees that the Plaintiffs cannot rely on estoppel to create coverage. As thoroughly

explained in *Ohio State Grange Mut. Ins. Co. v. Martin*, 1994 WL 603073, \*5 (Ohio App. 6 Dist.

1994):

> Finally, appellant asserts that he is entitled to a defense and coverage under various
> estoppel theories. First, appellant contends that Grange is estopped from denying
> coverage because it undertook his defense without reserving its right to deny
> coverage under the terms of the policy. This theory of estoppel is best set forth in
> *Socony-Vacuum Oil Co. v. Continental Casualty Co*. (1944), 45 Ohio Law Abs. 458,
> *affirmed* (1945), 144 Ohio St. 382, citing *Fidelity & Casualty Co. v. Blausey* (1934),
> 49 Ohio App. 556, as follows:
>
> " 'It is quite generally held that a liability insurer is precluded, in an action on a
> policy, from setting up the defense of noncoverage, when it assumes and conducts
> the defense of an action *against the insured*, with knowledge of the facts taking the
> accident outside the coverage of the policy, and without disputing its liability and

18

giving notice to the insured of a reservation of its rights.'" (Emphasis added.)

Appellant, however, is not an insured under the policy at issue. As such, this theory of estoppel will not operate to provide him with coverage and a defense in this matter.

Appellant further asserts that he should be entitled to coverage and a defense under the theory of promissory estoppel. He argues that, because upon the filing of the personal injury action, Grange undertook his defense, investigated the claim, and defended him at his deposition, it would be unfair and unconscionable to now allow Grange to deny coverage and a defense. In *Talley v. Teamsters Local No. 377* (1976), 48 Ohio St.2d 142, 146, the Supreme Court of Ohio adopted the following rule concerning promissory estoppel:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Under this standard, we fail to see what injustice will be avoided only by enforcement of Grange's "promise" to defend and provide coverage for appellant in this matter. Rather, we find the following statement by the lower court to be on point:

"In no case does the mistaken or inappropriate representation of an otherwise non-insured party create a new contract of insurance or contract for defense. Defendant has been the beneficiary of a gift of services, however, there is no obligation to continue to give those services."

*See also Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1298 (Wyo. 1995)

("Estoppel and waiver will not operate to create additional coverage in an existing contract of

insurance."); *GuideOne Mut. Ins. Co. v. Rock,* 2009 WL 1854452, at *7 (N.D. Miss. 2009)

("promissory estoppel cannot extend coverage or create coverage that is otherwise not afforded

within the terms of the policy"). The Court accordingly rejects the Plaintiffs' assertion that ALPS

is estopped from disputing coverage.

## IV. DEFENDANT SHOULD BE GRANTED SUMMARY JUDGMENT ON EACH OF PLAINTIFFS' CLAIMS

ALPS seeks summary judgment on each the Plaintiffs' claims because they are not insureds under the 2004 Policy. The Court concurs that there are no genuine issues of material fact and that summary judgment should be granted on each of the Plaintiffs' claims.

### A. CONTRACT CLAIMS

#### 1. BREACH OF EXPRESS CONTRACT

The Court finds that ALPS should be granted summary judgment on the Plaintiffs' claim that ALPS breached its written contract to defend and indemnify them in the *Keats* case. The Plaintiffs were not insureds under the 2004 Policy and consequently cannot prove a breach of contract based upon the denial of coverage. *Progressive Cas. Ins. Co. v. Brown's Crew Car of Wyo., Inc.*, 27 F. Supp. 2d 1288, 1293 ( D. Wyo. 1998) (holding there is no duty to defend if the claimant is not an insured).

#### 2. BREACH OF IMPLIED CONTRACT

The Plaintiffs maintain that ALPS expressly agreed, outside of the written insurance contract, to defend and indemnify the Plaintiffs in the *Keats* action. ALPS declares that summary judgment is proper on the implied contract claim because the Plaintiffs have presented no evidence or legal authority that an implied contract existed. The Wyoming Supreme Court has succinctly stated that:

The basic elements of a contract are offer, acceptance, and consideration. Whether

20

a contract has been formed, the exact terms of the contract, and whether there was a breach of those terms are questions of fact. Interpretation of the terms of an oral contract becomes a question of law only when they are shown without any conflict in the evidence. An implied contract may be created by the parties' conduct, but the conduct from which that inference is drawn must be sufficient to support the conclusion that the parties expressed a mutual manifestation of an intent to enter into an agreement. These factual questions may be resolved by summary judgment only if reasonable minds could not differ.

*Shaw v. Smith*, 964 P.2d 428, 435 (Wyo. 1998) (internal citations and quotations omitted).

According to ALPS, Plaintiffs never made an offer to ALPS and ALPS never agreed to provide a definite term of defense or indemnity. ALPS refers the Court to Plaintiffs' answers to interrogatories in which the Plaintiffs identify the promise made by ALPS as the acceptance of the Plaintiffs' claims for defense. (Doc. nos. 61-21, pp. 3-4, 61-22, pp. 3-4.) The Court agrees that the Plaintiffs have failed to provide any evidence of an implied contract between the Plaintiffs and ALPS. Although the question of whether particular conduct is sufficient to support a finding that an implied contract exists is generally submitted to a trier of fact, the question may be resolved by summary judgment if reasonable minds could not differ. *Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239, 248 (Wyo. 1992). Even if the Court were to find that ALPS promised to defend the Plaintiffs, there is no evidence of consideration by the Plaintiffs. Reasonable minds cannot differ on the conclusion to be drawn from this undisputed evidence. The parties did not enter into an implied contract. Summary judgment should be granted to ALPS on the breach of implied contract claim.

**B. BAD FAITH**

Plaintiffs allege that ALPS acted in bad faith in its investigation, failure to settle, handling and denial of the Keats claim. Because there was no coverage under the 2004 Policy, ALPS should be granted summary judgment on the claim. *Meyer v. Conlon*, 162 F.3d 1264, 1273 (Wyo. 1998) ("bad faith claim cannot substitute for coverage").

**C. FRAUD**

ALPS is entitled to summary judgment on the Plaintiffs' claim that ALPS falsely represented that the Plaintiffs were not entitled to coverage and that the Plaintiffs were damaged by their reliance on the fraudulent representations.

**D. WYOMING'S UNFAIR CLAIMS PRACTICES ACT**

ALPS is similarly entitled to summary judgment on the Plaintiffs' claim under Wyo. Stat. § 26-15-124 for payment of attorneys fees and interest as ALPS has not unreasonably refused to pay a loss covered by the 2004 Policy.

NOW, THEREFORE, IT IS HEREBY ORDERED that Attorney Liability Protection Society's Motions for Summary Judgment are **GRANTED** and each of the Plaintiffs' claims are dismissed with prejudice.

It IS FURTHER ORDERED that the Plaintiffs' Counter-Motion for Partial Summary Judgment is **DENIED**.

Dated this _31 st_ day of _March_, 2010.

_[signature]_
United States District Judge